UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MICHAEL P. C., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:22-cv-00572 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Michael C.[1] filed this action for judicial review[2] of the Acting Commissioner of the Social Security Administration's decision denying his applications for disability insurance benefits under Title II of the Social Security Act[3] and supplemental security income under Title XVI of the Social Security Act.[4] The Administrative Law Judge ("ALJ") denied Mr. C.'s applications, finding he did not qualify as disabled.[5] Mr. C. argues the ALJ erred by ignoring evidence supporting a disability finding, such that the decision is unsupported by substantial evidence.[6]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by his first name and last initial only.

[2] (*See* Compl., Doc. No. 2; Opening Br., Doc. No. 18.)

[3] 42 U.S.C. §§ 401–434.

[4] *Id.* §§ 1381–1385.

[5] (Certified Tr. of Admin. R. ("Tr.") 16–25, Doc. No. 12.)

[6] (Opening Br. 4, Doc. No. 18.)

1

The court[7] has carefully reviewed the record and the parties' briefs.[8] Because the ALJ properly considered the record evidence and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine if substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards.[9] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principals have been followed is grounds for reversal."[10]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[11] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[12] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] "The possibility of

---

[7] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 10.)

[8] The appeal is determined on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[9] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[11] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[12] *Id.* at 1154 (internal quotation marks omitted).

[13] *Id.* (internal quotation marks omitted).

drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[14] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[15]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[16] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[17]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has a residual functional capacity to perform past relevant work; and

---

[14] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[15] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[16] 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

[17] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

    5) she has a residual functional capacity to perform other work in the national economy considering her age, education, and work experience.[18]

The claimant has the burden, in the first four steps, of establishing disability.[19] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work.[20]

## PROCEDURAL HISTORY

On August 27, 2020, Mr. C. applied for disability insurance benefits under Title II.[21] Shortly afterward, he supplemented his application to add a request for supplemental security income under Title XVI.[22] For both applications, he alleged disability beginning on September 15, 2018, when he was twenty-eight years old.[23]

After an administrative hearing,[24] the ALJ issued a decision on March 22, 2022, finding Mr. C. not disabled during the relevant time period and denying his claims.[25] At step two of the sequential evaluation, the ALJ found Mr. C. had the severe impairments of generalized anxiety disorder and "bipolar II disorder/depression," and the nonsevere impairment of scoliosis.[26] At

---

[18] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[19] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[20] *Id.*

[21] (*See* Tr. 16, 204–07.)

[22] (*See* Tr. 16, 214–23.)

[23] (*See* Tr. 16, 214; *see also* Tr. 23, 241–42.)

[24] (*See* Tr. 31–50.)

[25] (Tr. 16–25.)

[26] (Tr. 18–19.)

step three, the ALJ found Mr. C.'s impairments did not meet or medically equal an impairment listing.[27]

The ALJ found Mr. C. had the residual functional capacity ("RFC")[28] to perform "a full range of work at all exertional levels" with specified nonexertional limitations:

- performing goal-oriented but not assembly line-paced work;
- only occasionally interacting with coworkers, supervisors, and the public; and
- adapting to routine changes in the workplace.[29]

In other words, the ALJ included no exertional limitations in Mr. C.'s RFC.[30] Based on this RFC, the ALJ found Mr. C. unable to perform past relevant work.[31] But, after considering the testimony of a vocational expert, the ALJ found Mr. C. capable of performing other jobs existing in significant numbers in the national economy.[32] Therefore, the ALJ found Mr. C. not disabled and denied his claims.[33]

---

[27] (Tr. 19–20.)

[28] A claimant's RFC is the most she can do in a work setting considering her limitations. *See* 20 C.F.R. § 404.1545(a)(1); *see also* Soc. Sec. Ruling 96-8p, 1996 SSR LEXIS 5, at *1 (noting RFC is an assessment of the ability to do sustained work for eight hours per day, five days per week). In assessing RFC, the ALJ considers all medically determinable impairments and all relevant medical and other evidence in the record. *See* 20 C.F.R. § 404.1545(a)(2)–(3).

[29] (Tr. 20.)

[30] (*See* Tr. 24.)

[31] (Tr. 23.)

[32] (Tr. 24.)

[33] (Tr. 25.)

5

The Appeals Council denied Mr. C.'s request for review,[34] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Mr. C. raises a single claim of error; he argues the ALJ erred by ignoring record evidence favorable to a disability finding such that the decision is unsupported by substantial evidence. Specifically, Mr. C. argues the ALJ selectively considered (and ignored) evidence regarding the effect of medication on Mr. C.'s pain and moods, which undermines his finding that Mr. C. can work fulltime.[35] However, the record shows the ALJ properly considered Mr. C.'s symptoms and medication efficacy in assessing his RFC, and properly explained his conclusions as to resulting limitations. Because the ALJ's factual findings are supported by substantial evidence and the ALJ did not legally err, the Commissioner's decision is affirmed.

The only portion of the RFC finding Mr. C. challenges relates to his overall ability to work fulltime.[36] He makes no other claim of error with regard to the RFC finding. While Mr. C. frames his claim as the ALJ's failure to consider evidence favorable to a disability finding, the evidence Mr. C. cites exclusively relates to his subjective symptoms of pain and mood—and the efficacy of Mr. C.'s medication regimen in treating these symptoms.[37] Accordingly, the correctness of ALJ's analysis of Mr. C.'s subjective systems is central to Mr. C.'s claim.

---

[34] (Tr. 1–6.)

[35] (Opening Br. 4–10, Doc. No. 18.)

[36] (*See id.* at 5.)

[37] (*See id.* at 5–7.)

6

Subjective Symptom Evidence

ALJs evaluate subjective symptoms using a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[38] Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."[39] In doing so, the ALJ must "examine the entire case record."[40] The ALJ considers factors such as: the claimant's daily activities; the duration, frequency, and intensity of symptoms; medication taken and whether it alleviates the symptoms; and other treatment or measures used to relieve the symptoms.[41] The ALJ also considers whether there are inconsistencies between the claimant's statements and the record or inconsistencies in the evidence.[42]

In this case, the ALJ properly evaluated Mr. C.'s subjective symptoms. First, the ALJ assessed Mr. C.'s subjective symptoms against the backdrop of his claimed impairments of: bipolar disorder, generalized anxiety disorder, major depressive disorder, and scoliosis.[43]

---

[38] Soc. Sec. Ruling 16-3p, 2016 SSR LEXIS 4, at *3; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b).

[39] Soc. Sec. Ruling 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[40] Soc. Sec. Ruling 16-3p, 2016 SSR LEXIS 4, at *9–10; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[41] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[42] *Id.* §§ 404.1529(c)(4); 416.929(c)(4).

[43] (*See* Tr. 20.)

7

The ALJ acknowledged Mr. C.'s claims of pain and mood problems.[44] He found Mr. C.'s medically determinable impairments could reasonably be expected to cause these symptoms.[45] But he found Mr. C.'s statements regarding the intensity, persistence, and limiting effects of the symptoms "not entirely consistent with the medical evidence and other evidence in the record"[46] and explained the basis for this finding.[47]

1. *Complaints of Pain Related to Physical Impairments*

As an initial matter, the Commissioner asserts Mr. C. waived any claim that the ALJ erred in assessing his physical limitations, by failing to link his argument regarding pain or pain medication efficacy to any physical impairment.[48] Mr. C. does not dispute this in his reply. Rather, he contends only that the ALJ legally erred by failing to weigh certain evidence in the first place (thereby failing to resolve conflicts in the evidence), which makes it impossible to follow the ALJ's reasoning.[49]

The only physical impairment Mr. C. alleged to be disabling is scoliosis.[50] The ALJ found Mr. C.'s scoliosis to be a nonsevere impairment because diagnostic imaging, physical examinations, and medical consultants' assessments supported a finding that Mr. C.'s scoliosis

---

[44] (*See* Tr. 21.)

[45] (Tr. 21.)

[46] (Tr. 21.)

[47] (Tr. 20–23.)

[48] (Ans. Br. 5–7, Doc. No. 24.)

[49] (Reply Br. 2–5, Doc. No. 25.)

[50] (Tr. 20, 269.)

did not significantly limit his ability to perform basic work activities.[51] In fact, the agency medical consultants found Mr. C.'s claims related to scoliosis unsupported by medical evidence, which showed no radiating pain or other symptoms; normal gait, station, and range of motion; only slight scoliosis with no leg weakness or neurological effect; and unremarkable spinal imaging.[52]

To make his finding with regard to Mr. C.'s subjective complaints of physical pain, the ALJ relied on this and other evidence of Mr. C.'s unimpeded functioning, including his normal gait and station, his ability to "toe walk" and "tandem walk" normally, his full muscle strength, his ability to fully squat and rise without help, and straight leg raise testing.[53] Although Mr. C. does not dispute this objective physical evidence or the ALJ's characterization of it, he argues the ALJ ignored Mr. C.'s subjective claims that medication only controlled his pain for short periods of time.[54] But nowhere does Mr. C. link his pain medication argument to scoliosis or any other physical condition—nor does he argue he is more physically limited than the ALJ found.

Where Mr. C. makes no claim of error with regard to the ALJ's assessment of the physical limitations tied to his claims of pain, he has waived any argument related to physical impairments or exertional limitations.[55] The ALJ's assessment of Mr. C.'s physical impairments

---

[51] (Tr. 18–19 (citing Tr. 97, 105, 770, 781, 790); *see also* Tr. 432, 451.)

[52] (*See* Tr. 59, 69–72, 105, 108–110.)

[53] (Tr. 21–23 (citing Tr. 430–32, 489, 541, 577, 697, 755).)

[54] (*See* Opening Br. 4–10)

[55] *See, e.g.*, *Arterberry v. Berryhill*, 743 F. App'x 227, 231 n.2 (10th Cir. 2018) (unpublished) (finding perfunctory argument regarding functional limitations waived); *cf. Kidd v. Comm'r, Soc. Sec. Admin.*, No. 21-1363, 2022 U.S. App. LEXIS 21259, at *5 (10th Cir. Aug. 2, 2022)

and limitations is sufficiently articulated and is supported by substantial evidence. Mr. C.'s claims of pain and pain medication efficacy are relevant only to the ALJ's assessment of his mental impairments and limitations—which is addressed next.

2. *Complaints (Pain and Mood) Related to Mental Impairments*

Mr. C.'s only claim as to his subjective symptoms of pain and mood regarding his mental impairments relates to whether the ALJ adequately considered all the evidence regarding the effect of his medication. Mr. C. contends that if the ALJ had credited his statements regarding the limited efficacy of the medications he took for mental-health related pain and mood problems, it would be clear he cannot work fulltime.

In support of his position, Mr. C. points to evidence in the record supporting a finding that some of his pain and mood medications only worked for short periods of time.[56] As an initial matter, the ALJ was not obligated to discuss all the evidence in the record.[57] Even so, this evidence is entirely based on Mr. C.'s subjective self-reports about his pain levels, his mood, and the effect of the medication on them. And the ALJ properly found Mr. C.'s subjective claims were not fully consistent with or supported by the record—the record showed his symptoms were less intense, persistent, and limiting than claimed.[58] The ALJ explained his view of the evidence and the conclusions he drew from it, drawing plausible inferences and providing reasoning

---

(unpublished) (noting that a failure to apply the proper legal standard requires reversal only where the error was harmful, which the challenging party bears the burden to show (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009))).

[56] (*See* Opening Br. 4–7, Doc. No. 18.)

[57] *See Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) ("There is obviously no requirement that the ALJ reference everything in the administrative record.").

[58] (Tr. 22–23.)

sufficient for subsequent reviewers to follow.[59] Finally, the ALJ assessed work restrictions to account for Mr. C.'s mental-health limitations.[60] And Mr. C. has not established these are unsupported by substantial evidence in the record. In other words, even if Mr. C.'s medications were only effective in controlling his subjective mental-health symptoms for short periods of time, Mr. C. has not established this means his symptoms or impairments prohibit fulltime work—as opposed to work within the restrictions the ALJ imposed.

In assessing the inconsistency of Mr. C.'s subjective symptoms with the record, the ALJ relied on many of the same records Mr. C. highlights in his opening brief. Mr. C. argues this reliance shows the ALJ cherry-picked evidence, ignoring statements favorable to a disability finding.[61] But what it really shows is that the ALJ considered the precise records Mr. C. relies on. He did not ignore or disregard the records Mr. C. cites, nor did he legally err in his assessment of these records. Overall, his findings are supported by substantial evidence.

Mr. C. relies on *K.S. v. Kijakazi*[62] for the proposition that an ALJ errs by improperly focusing "on a selective portion of the medical records, while ignoring other evidence indicating that Plaintiff is more limited."[63] In *K.S.*, the District of Colorado took issue with the ALJ's

---

[59] *See Elizabeth A. M. v. Saul*, No. 19-CV-544-JFJ, 2021 U.S. Dist. LEXIS 62727, *20–21 ("The ALJ is permitted to make reasonable inferences in analyzing the evidence." (citing *Tillery v. Schweiker*, 713 F.2d 601, 603 (10th Cir. 1983))); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").

[60] (*See* Tr. 22–23.)

[61] (Opening Br. 8–10, Doc. No. 18.)

[62] No. 20-cv-02030, 2022 U.S. Dist. LEXIS 33739 (D. Colo. Feb. 25, 2022) (unpublished).

[63] (Opening Br. 9 (quoting *K.S.*, 2002 U.S. Dist. LEXIS 22738, at *30).)

11

conclusion that the plaintiff's seizures were "largely controlled with medication," finding it unsupported by substantial evidence.[64] But *K.S.* is factually distinguishable in critical ways. In *K.S.*, the court criticized the ALJ for mischaracterizing records,[65] not mentioning records at all,[66] improperly discounting witness statements,[67] and making mistaken statements about record facts.[68] In totality, the court found this approach undermined the ALJ's reasoning and constituted legal error.[69]

Here, the ALJ considered and cited to the records Mr. C. relies on. Mr. C. implies the ALJ misquoted various records by ignoring parts of sentences or paragraphs.[70] He did not. Although the ALJ summarized and interpreted the records, he did not quote from them at all. At core, Mr. C. disagrees with how the ALJ characterized the records. But the ALJ did not mischaracterize the records, nor did he disregard records or improperly discount them. Unlike in *K.S.* and contrary to Mr. C.'s claims, the ALJ did not find Mr. C.'s mental symptoms were controlled with medication. Instead, he accurately described the records as showing *improvement* with medication, while also recognizing Mr. C. had trouble controlling his symptoms. For instance, the ALJ noted that:

---

[64] 2022 U.S. Dist. LEXIS 33738, at *30.

[65] *Id.* at *30.

[66] *Id.* at *31.

[67] *Id.* at *32–33.

[68] *Id.* at *33.

[69] *Id.* at *33–34.

[70] (*See* Opening Br. 4–6, Doc. No. 18.)

- During a checkup at Restorative Health, Mr. C. noted fewer suicidal thoughts over the previous few months, he felt "medication had improved his pain," and he "denied any pain" at that time.[71]

- During that same visit, Mr. C. reported THC medication had "improved his pain and mood."[72]

- During a University of Utah clinic appointment, Mr. C. "reported that ketamine medication helped with his pain and mood."[73]

- During a Lotus Center checkup, Mr. C. "reported that his symptoms had improved while using ketamine nose spray" and his "depression symptoms had gotten better."[74]

- During other Lotus Center checkups, Mr. C. "reported that, overall, medication was helping to alleviate his mental health symptoms" and "that medication was working well for him."[75]

- In assessing a letter by Rita Rutland, APRN,[76] the ALJ noted Mr. C. had started THC medication and felt it had improved both his mood and his pain.[77]

- In assessing the opinion of David Ericksen, Ph.D.,[78] a consultative examiner, the ALJ noted Mr. C.'s "mental health symptoms improved with medication" and he "reported decreased suicidal ideations during multiple checkups."[79]

---

[71] (Tr. 21 (citing Tr. 860–61).)

[72] (Tr. 23 (citing Tr. 860).)

[73] (Tr. 21 (citing Tr. 752).)

[74] (Tr. 21 (citing Tr. 683).)

[75] (Tr. 21 (citing Tr. 695, 699).)

[76] (*See* Tr. 848–49.)

[77] (Tr. 23 (citing Tr. 860–61).) The ALJ found Ms. Rutland's opinions in the letter as to Mr. C.'s ability to work unpersuasive, as inconsistent with her own examinations, and noted she suggested no functional limitations. (Tr. 23.)

[78] (*See* Tr. 426–29.)

[79] (Tr. 23 (citing Tr. 683, 695, 699, 752, 860).) The ALJ found Dr. Ericksen's opinion that Mr. C. would have difficulty working unpersuasive due to its vagueness, its failure to account for Mr. C.'s improvement with treatment, and inconsistencies between that conclusion and Dr. Erickson's own observations and testing. (Tr. 23.)

But the ALJ also noted:

- Mr. C.'s report that "pain can immobilize him for days."[80]

- Mr. C.'s report that mental illness severely "affects his memory and ability to focus, as well as his ability to interact with others."[81]

- Mr. C.'s claim that when he was suffering from a manic-depressive episode, he could not function.[82]

- During the consultative psychological examination, Mr. C. "stated that he suffered from anxiety most of the time and he had difficulty controlling it."[83]

As detailed in Mr. C.'s opening brief, the record shows the medication Mr. C. took did not alleviate his subjective pain and mental symptoms.[84] But the ALJ did not find otherwise; he did not find medication fully controlled Mr. C.'s symptoms. Instead, he noted Mr. C. obtained some relief from the medication—that his symptoms improved with treatment.[85] This finding is supported by the record as a whole, which the ALJ fairly considered. Although Mr. C. may wish the ALJ had assessed the evidence differently, the court may not reweigh evidence in Mr. C.'s favor, even if an alternative view could constitute substantial evidence in support of a disability finding.

The ALJ's findings are further supported by the administrative record. Although Mr. C. described extreme symptoms from mental impairments, the ALJ reasonably found the evidence

---

[80] (Tr. 21 (citing Tr. 291).)

[81] (Tr. 21 (citing Tr. 291, 296).)

[82] (Tr. 21 (citing Tr. 291, 294).)

[83] (Tr. 22 (citing Tr. 428).)

[84] (Opening Br. 5–7. Doc. No 18.)

[85] (Tr. at 20–23.)

did not support the degree of limitation Mr. C. alleged. In reaching this conclusion, the ALJ relied (among other things) on numerous, largely normal, mental status examination findings, including Dr. Ericksen's Mini-Mental State Examination, on which Mr. C. scored a 29 of 30—well within normal range.[86] And the ALJ's findings are supported by the agency psychological consultants' unchallenged prior administrative medical findings, in which they concluded Mr. C. could work with superficial interactions or low public and peer contact.[87] Overall, these records provide more than a scintilla of evidence supporting the ALJ's findings that Mr. C.'s limitations were not as severe as claimed. For these reasons, the ALJ did not err in his assessment of Mr. C.'s subjective symptoms or the effect of medication on the symptoms.

As the Commissioner noted, this case is analogous to *Allman v. Colvin*.[88] In *Allman*, the Tenth Circuit found that "the record contains support for both the notion that [the claimant] has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe."[89] The court noted "[t]he ALJ was entitled to resolve such evidentiary conflicts and did so."[90] "Concluding otherwise would require us to reweigh the evidence, a task we may not perform."[91] Where it is apparent the ALJ assessed the same records Mr. C. relies on—and those records support the ALJ's finding with regard to Mr. C.'s symptom

---

[86] (Tr. 21–23 (citing Tr. 426–29, 684, 701, 859, 864).)

[87] (Tr. 22–23 (citing Tr. 61–69, 98–101).)

[88] 813 F.3d 1326 (10th Cir. 2016); (*see* Ans. Br. 9, Doc. No. 24).

[89] *Id*. at 1333.

[90] *Id*.

[91] *Id.*

improvement in response to medication—the evidence will not be reweighed, even though the same records could support an alternate finding.

Finally, unlike in *K.S.*, the ALJ included significant work-related limitations to account for Mr. C.'s symptoms—even though he found Mr. C.'s symptoms were not as extreme as claimed and were eased somewhat by medication.[92] Mr. C. does not show how the evidence conflicts with the ALJ's ultimate finding that he has work-related mental RFC limitations. Specifically, the ALJ limited Mr. C. to goal-oriented but not assembly line-paced work; only occasional interaction with supervisors, coworkers, and the public; and the ability to adapt to only routine changes in the workplace.[93] Mr. C. has not shown these limitations conflict with the evidence or more restrictions are warranted. Even assuming his medications only improve his symptoms for short periods of time, as opposed to controlling or alleviating them, Mr. C. did not point to record evidence or legal authority indicating this prohibits fulltime work. For instance, Mr. C. did not establish a person must be pain-free or depression-free in order to work fulltime under Social Security regulations.

To the extent Mr. C. suggests the ALJ needed to discuss more evidence in depth, including evidence he cites as supporting a disability finding, he is incorrect. The ALJ only needed to provide sufficient articulation to permit the court to follow his reasoning and determine whether he applied the correct legal standards.[94] The ALJ's findings meet that threshold. Far more than a scintilla of evidence supports the ALJ's determination.

---

[92] (Tr. 20, 23).

[93] (Tr. 20).

[94] *See, e.g.*, *Olson v. Comm'r, Soc. Sec. Admin.*, 843 F. App'x 93, 96 (10th Cir. 2021) (unpublished) ("To the extent that Olson argues the ALJ should have discussed the medical evidence in more depth, such an argument would not furnish us with a basis for reversal. Where,

**CONCLUSION**

For all these reasons, the court AFFIRMS the Commissioner's decision.

DATED this 28th day of August, 2023.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." (cleaned up)).